UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TERESITA BIBLE and MATTHEW BIBLE**<br><br>*Plaintiffs,*<br><br>VERSUS<br><br>**LUMBER LIQUIDATORS, INC.**,<br>a Delaware corporation,<br>**LUMBER LIQUIDATORS LEASING, LLC**,<br>a Delaware limited liability corporation,<br>**LUMBER LIQUIDATORS HOLDINGS, INC.**,<br>a Delaware corporation, and<br>**LUMBER LIQUIDATORS SERVICES, LLC**,<br>a Delaware limited liability corporation,<br><br>*Defendants.* | **CASE NO. 4:17-cv-00556**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

Plaintiffs, Teresita Bible and Matthew Bible ("**Plaintiffs**'), bring this action for damages against Defendants Lumber Liquidators, Inc., Lumber Liquidators Leasing, LLC, Lumber Liquidators Holdings, Inc., and Lumber Liquidators Services, LLC (collectively, "**Lumber Liquidators**" or "**Defendants**") and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

### INTRODUCTION

1.  This is a proposed action brought by Plaintiffs on behalf of themselves against Lumber Liquidators to obtain damages and injunctive relief arising from and relating to the purchase and installation of Lumber Liquidators' laminate and engineered wood flooring materials manufactured in China ("**Chinese Flooring**").

1

2. Lumber Liquidators is the largest retailer of hardwood flooring in the United States, with more than 360 stores in 46 states and annual revenues of more than one billion dollars. As part of its regular business operations, Lumber Liquidators sells laminate and engineered wood flooring. More than 100 million square feet of Lumber Liquidators' laminate flooring is installed in homes in the United States each year. Although Lumber Liquidators is based in the United States, much of its laminate and engineered wood flooring is manufactured in China.

3. This action arises out of Lumber Liquidators' scheme to import into the United States, and to deceptively warrant, advertise and sell Chinese Flooring that fails to comply with relevant formaldehyde standards applicable to such products.

4. Despite its direct representations to the contrary, Lumber Liquidators manufactures, distributes and sells Chinese Flooring that emits and off-gasses excessive levels of formaldehyde, which is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer.

5. Further, contrary to Lumber Liquidators' repeated, detailed and uniform representations that its flooring complies with strict formaldehyde standards on its product labels, website, and elsewhere, at the time of purchase, the toxic formaldehyde emissions from its Chinese Flooring exceeds the maximum permissible limits set by the referenced standards many times over.

6. Lumber Liquidators' illegal, deceptive and unfair conduct with respect to its manufacturing, marketing, and selling of Chinese Flooring has caused Plaintiff to suffer direct financial harm. Plaintiff's purchases are markedly less valuable because of the elevated level of formaldehyde emissions. Plaintiff would not have purchased flooring from Lumber Liquidators, or would have paid significantly less for the flooring, had she known that the flooring contained elevated levels of the toxin formaldehyde.

## PARTIES

7.     Plaintiffs, Teresita Bible and Matthew Bible, are persons of the full age of majority domiciled and residing in the County of Fort Bend, State of Texas.

8.     Defendant, Lumber Liquidators, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Lumber Liquidators, Inc. is licensed and does business in the state of Texas.

9.     Defendant, Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

10.    Defendant, Lumber Liquidators Holdings, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

11.    Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00 and is a class action in which Members of the Class are citizens of a state different from Defendants.

13.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391, because Plaintiff resides in this Judicial District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.  In addition, Defendants do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District, and reside here for venue purposes.

**BACKGROUND**

14.     Lumber Liquidators was established in 1993 and has since become the largest retailer of hardwood flooring in the United States, with more than 360 stores in 46 states and annual revenues of more than one billion dollars. As part of its regular business operations, Lumber Liquidators sells laminate and engineered wood flooring directly to homeowners or contractors acting on behalf of homeowners. More than 100 million square feet of Lumber Liquidators' laminate flooring is installed in homes in the United States each year.

15.     Lumber Liquidators manufactures and purchases much of its wood and laminate flooring materials in China. Lumber Liquidators has a representative office in Shanghai China and assumed direct control of its entire product sourcing in China, through its Chinese headquarters.

16.     Lumber Liquidators represents that it "negotiates directly with the mills, eliminating the middleman and passing the savings on to the customers." Lumber Liquidators further represents itself as an "environmentally conscientious company [that] only purchases from suppliers who practice sustainable harvesting, which allows forests to heal and re-grow faster," and that "[a]t Lumber Liquidators, we believe hardwood flooring is a natural, healthy choice—for both you and the environment."

17.     Lumber Liquidators manufactured, labeled and sold the toxic Chinese Flooring as being compliant with "CARB [California Air Resources Board] regulations in the State of California." CARB is an entity which has promulgated safety standards for the emission of formaldehyde for products sold in California. Lumber Liquidators represents that it requires all of its "suppliers [to] comply with California's advanced environmental requirements, even for products sold outside California."

18. Contrary to these representations, Lumber Liquidators' Chinese Flooring is not CARB compliant. Rather, the Chinese Flooring contains a dangerous level of formaldehyde gas, which exceeds the "CARB regulations in the State of California" and the federal standards promulgated in the Toxic Substances Control Act, 15 U.S.C. 2601, *et. seq.* (Title VI – Formaldehyde Standards of Composite Wood Products).

19. Formaldehyde is hazardous to human health. Its gases can cause cancer, asthma, chronic respiratory irritation and other ailments, including skin and breathing problems. The risk of these health problems is significantly greater for children. Because the Chinese Flooring that Lumber Liquidators sold to Plaintiff exceeds allowable levels imposed by CARB and the Toxic Substances Control Act, the Chinese Flooring poses great health risks to consumers.

20. Lumber Liquidators knew or should have known that its Chinese Flooring contained dangerous levels of formaldehyde at levels exceeding the CARB standards and the Toxic Substances Control Act. Nonetheless, Lumber Liquidators' marketing materials for the Chinese Flooring contained false and misleading information relating to compliance with these laws, which were designed to increase sales of the product at issue.

21. Despite knowing of the defects in the Chinese Flooring, Lumber Liquidators has continued to sell the Chinese Flooring to consumers and has not notified affected purchasers, builders, and/or homeowners of the defect in its flooring.

22. Plaintiffs have not received the value for which they bargained when the Chinese Flooring was purchased. There is a difference in value between the Chinese Flooring, as warranted, and the Chinese Flooring containing the defect. Plaintiffs would not have purchased the Chinese Flooring or would have paid less for it had they known it contained formaldehyde at levels in violation of CARB regulations and the Toxic Substances Control Act.

23. Plaintiff have been damaged by Lumber Liquidators' dangerous and deceptive Chinese Flooring, and are entitled to a return of the full purchase price paid for the Chinese Flooring and other damages to be proven at trial.

## PLAINTIFF'S FACTUAL ALLEGATIONS

24. Plaintiffs purchased approximately 785.42 square feet of Dream Home - KM HS Summer Retreat Teak laminate flooring from Lumber Liquidators via Store 1221 on October 26, 2014 for $1,194.40. Plaintiffs collected the purchased flooring from the Lumber Liquidators store located in Stafford, Texas on Murphy Road. Upon information and belief and as indicated on the product label, this flooring was manufactured at a laminate mill in China.

25. In 2014, Plaintiffs installed the Chinese Flooring in their home.

26. When Plaintiff visited the Lumber Liquidators store to complete her transaction and collect the purchased flooring, she specifically read the product label, which represented that the product was "California 93120 PHASE 2 Compliant for Formaldehyde." Plaintiff relied on this representation and assumed that the Chinese Flooring complied with all applicable laws and regulations, as represented. This representation was important to Plaintiff, as several members of her family have compromised immune systems.

27. Plaintiffs would not have purchased the flooring had they known it did not comply with CARB formaldehyde standards.

28. When Plaintiffs purchased the Chinese Flooring, the representations on the product packaging, on Lumber Liquidators' website, and made by Lumber Liquidators' salespeople, regarding compliance with CARB formaldehyde standards were not true. Rather, the Chinese Flooring contained formaldehyde levels in excess of CARB standards and other applicable laws and regulations.

6

29. Plaintiff would not have purchased the Chinese Flooring from Lumber Liquidators had she known about the defect in the flooring, including that it did not comply with CARB formaldehyde standards and other applicable laws and regulations.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action on behalf of herself and all others similarly situated for the purpose of asserting claims alleged in this complaint on a common basis.

31. Pursuant to Rules 23(a), (b)(3), (b)(2) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all others similarly situated. Specifically, Plaintiff seeks to represent the following Class of persons:

**INJUNCTIVE RELIEF CLASS:**
**All persons and entities in the state of Texas who purchased and installed engineered wood and laminate flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, or manufactured in China.**

**DAMAGES CLASS:**
**All persons in the state of Texas who purchased and installed engineered wood or laminate flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed or manufactured in China.**

Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Classes are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

## Numerosity

32. The proposed Class is so numerous that individual joinder of all Members is impracticable.

33. Lumber Liquidators is the largest retailer of hardwood flooring in the United States, with more than 360 stores in 46 states, including Texas. In addition, Lumber Liquidators has annual revenues of more than one billion dollars, and more than 100 million square feet of Lumber Liquidators laminate flooring is installed in homes in the United States each year. As a result, the proposed Class likely includes thousands, if not tens of thousands, of Members. While the precise number and identities of Class Members are unknown at this time, such information can be readily ascertained from Defendants' records and through appropriate investigation and discovery. The disposition of Class Members' claims in a single action will provide substantial benefit to all parties and to the Court.

**Predominance of Common Questions of Law and Fact**

34. Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Lumber Liquidators' Chinese Flooring emits excessive levels of formaldehyde;

   b. Whether Lumber Liquidators knew or should have known that its Chinese Flooring did not conform to its labels and marketing descriptions;

   c. Whether Lumber Liquidators omitted and concealed material facts from its communications and disclosures to Plaintiff and Class Members regarding the compliance of its Chinese Flooring products with applicable laws and regulations;

   d. Whether Lumber Liquidators breached its express or implied warranties to Plaintiff and Class Members with respect to its Chinese Flooring products;

   e. Whether Lumber Liquidators has been unjustly enriched as a result of its conduct;

  f. Whether, as a result of Lumber Liquidators' conduct, Plaintiff and Class Members have suffered damages and, if so, the appropriate measure of damages to which they are entitled; and

  g. Whether, as a result of Lumber Liquidators' misconduct, Plaintiff and Class Members are entitled to equitable relief or other relief and, if so, the nature of such relief.

### Typicality

35. Plaintiff's claims are typical of the claims of the other Class Members. Plaintiff and each Class Member has been injured by the same misconduct of Lumber Liquidators. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class Members' claims and are based on the same legal theories.

### Adequacy

36. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action.

### Superiority

37. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

  a. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

  b. Individual joinder of all Class Members is impracticable;

  c. Absent a Class, Plaintiff and Class Members will continue to suffer harm as a result of Defendants' unlawful conduct;

d. Given the amount of individual Class Members' claims, few, if any, Class Members could afford to, or would, seek legal redress for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

e. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

f. Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other Class Members to protect their interests; and

g. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused by Defendants.

38. Defendants implemented uniform policies and practices relating to the Chinese Flooring, which resulted in uniform damage to Plaintiff and Class Members. As a result, Defendants have acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

39. Defendants' failure to comply with their legal obligations and warranties to consumers arises out of a common omission or failure to act, which has a uniform effect on Plaintiff and all Class Members. Plaintiff seeks preliminary and permanent injunctive relief and

equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendants to discontinue their unlawful conduct.

40. Because Plaintiff seeks injunctive and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Further, bringing individual claims would overburden the courts and would be an inefficient method of resolving the dispute at the center of this litigation.

## FIRST CAUSE OF ACTION
### *Breach of Express Warranty*

41. Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

42. Lumber Liquidators warranted that its flooring was free of defects when it sold those products to Plaintiff and Class Members as described in this Complaint. Defendants further represented that their flooring products complied with CARB formaldehyde standards and all applicable laws and regulations. Plaintiff and Class Members reasonably relied upon these representations.

43. Lumber Liquidators' express representations and warranties became part of the basis of the bargain.

44. Lumber Liquidators breached their warranties by:

   a. Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

   b. Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

   c. Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

45. Plaintiff, on behalf of themselves and the other Class Members, provided Lumber Liquidators with timely and reasonable notice of its breach of warranty pursuant to TEXAS BUS. &COMMERCE CODE § 2.607.

46. Lumber Liquidators was also on notice regarding the excessively high levels of formaldehyde in its flooring, from the complaints and requests for refund it received from Class Members, Internet message boards and from published product reviews.

47. Any attempt by Lumber Liquidators to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

48. As a direct and proximate result of Lumber Liquidators' actions, Plaintiff and Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale. Additionally, Plaintiff and Class Members have either incurred or will incur economic damages at the point of repair, in the form of the cost of repair and/or the cost of purchasing non-defective flooring to replace the Lumber Liquidators' flooring.

49. Plaintiff and Class Members are entitled to legal and equitable relief against Lumber Liquidators, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## SECOND CAUSE OF ACTION
### *Breach of Implied Warranty*

50. Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

51. At all times relevant hereto, a duty imposed by law requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used.

52. Lumber Liquidators breached this duty by selling flooring to Plaintiff and Class Members that was not merchantable or fit for a particular purpose.

53. Lumber Liquidators was notified that its product was not merchantable or fit for a particular purpose within a reasonable time after the defect manifested itself to Plaintiff and Class Members.

54. Any attempt by Defendant to disclaim its implied warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

55. Plaintiffs, on behalf of themselves and other Class Members, provided Lumber Liquidators with timely and reasonable notice of its breach of warranty pursuant to TEXAS BUS. &COMMERCE CODE § 2.607.

56. Lumber Liquidators was also on notice regarding the excessively high levels of formaldehyde in its flooring from the complaints and refund requests for refund it received from Class Members, Internet message boards and published product reviews.

57. As a result of the non-merchantability of Lumber Liquidators' flooring, as described above, Plaintiff and Class Members sustained damages including but not limited to purchase price of the product, property damage, and requisite cost of repair and replacement.

### THIRD CAUSE OF ACTION
*Violation of the Texas Deceptive Trade Practices Act ("DTPA")*

58. Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

59. The DTPA provides that "(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code." TEX. BUS. &COM. CODE 17.46(a).

   (1) Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services;

 (2) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

 (3) using deceptive representations or designations of geographic origin in connection with goods or services;

TEX. BUS. &COM. CODE 17.46(b)(2)-(4).

 60. Lumber Liquidators' conduct described above and throughout this Complaint took place within the State of Texas and constitutes unfair and deceptive trade practices in violation of the DTPA. TEX. BUS. &COM. CODE 17.46(a).

 61. Lumber Liquidators engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiff and Class Members would rely upon the concealment, suppression, or omission of such material facts and purchase Lumber Liquidators' Chinese Flooring containing the defect.

 62. Plaintiff and Class Members would not have purchased the Chinese Flooring had they known or become informed of the material defects in the Chinese Flooring.

 63. Lumber Liquidators' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the DTPA, TEX. BUS. &COM. CODE 17.46(a).

 64. Lumber Liquidators has acted unfairly and deceptively by misrepresenting the quality and/or safety of the Laminate Flooring Products made in China.

 65. Lumber Liquidators either knew, or should have known, that the Chinese Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to Plaintiff's and Class Members' property.

 66. Upon information and belief when the Chinese Flooring left Lumber Liquidators' control, the Chinese Flooring contained the defects described in the Complaint resulting in excessive levels of formaldehyde emissions.

67. At the time of sale, the Chinese Flooring contained the defects. The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unable to perform the ordinary purposes for which it was used, as well as caused the resulting damage described herein.

68. As a direct and proximate cause of the DTPA violations described above, Plaintiff and Class Members have purchased the unsafe and dangerous Chinese Flooring based on nondisclosure of material facts. Had Plaintiff and Class Members known the defective nature of the Chinese Flooring used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures.

69. Plaintiff and Class Members reasonably relied upon Lumber Liquidators' representations that the Chinese Flooring met all applicable codes and standards.

70. As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiff and Class Members will suffer damages, which include, without limitation, purchase price of the product, costs to inspect, repair or replace their flooring and other property, in an amount to be determined at trial.

71. As a result of Lumber Liquidators' unfair and deceptive trade practices described above, Plaintiff and Class Members have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Lumber Liquidators is liable to the Plaintiff and the Class for treble their ascertainable losses, plus attorneys' fees and costs, prayed for herein in this Complaint.

### **FOURTH CAUSE OF ACTION**
### *Breach of Contract – Uniform Commercial Code*

72. Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

73. Texas Bus. & Com. Code Ch. 2 adopts the Uniform Commercial Code ("UCC") for sales of goods.

74. Lumber Liquidators is considered a "merchant" under the UCC as it "deal[s] in goods of the kind," for example, the Laminate Flooring products at issue made in China.

75. Lumber Liquidators' laminate flooring products are considered "goods" under the statutory definition of the UCC. *See* Texas Bus. & Com. Code Ch. 2.

76. Plaintiff and Class Members, entered into respective contracts with Lumber Liquidators by accepting the terms of sale for Lumber Liquidators' laminate flooring products.

77. Plaintiff and Class Members, gave monetary consideration for Lumber Liquidators laminate flooring products.

78. As part of the bargain, Plaintiff and Class Members relied on Lumber Liquidators representation that the laminate flooring products were fit for use and a particular purpose. More specifically, Plaintiff relied on Lumber Liquidators' representations that its products were safe and compliant with CARB standards.

79. In reliance upon those representations, Plaintiff and Class Members entered into sales contracts agreeing to buy Lumber Liquidators' Chinese Flooring, which was installed and used on Plaintiff's and Class Members' respective properties.

80. Lumber Liquidators breached these respective sales contracts with Plaintiff and Class Members by falsely representing to Plaintiff and Class Members, that the Chinese Flooring was CARB compliant.

81. Upon information and belief, when Lumber Liquidators made those representations it knew they were false and/or misleading.

82. At the time Lumber Liquidators made these representations, Plaintiff and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

83. Lumber Liquidators knew, or should have been known, that Lumber Liquidators' Chinese Flooring with excessive formaldehyde levels was defective and not fit for its customary and normal use.

84. Lumber Liquidators knew, or should have known, that its Laminate Flooring Products, containing excessive formaldehyde levels, had a potential to damage Plaintiff and Class Members.

85. By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage including, but not limited to purchase price of the defective product, cost of inspection, and/or replacement costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other putative Class Members in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

    a. For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as Representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

    b. For compensatory damages sustained by Plaintiff and the Damages Class;

    c. For equitable and/or injunctive relief for the Injunctive Relief Class;

    d. For punitive damages, as allowable by law, to Plaintiffs and Class Members;

    e. For statutory damages, as allowable by the statutes asserted above, to Plaintiff and Class Members;

    f. For payment of costs of suit herein incurred;

    g. For both pre-judgment and post-judgment interest on any amounts awarded; and,

h.  For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and for such other and further relief as the Court may deem just and proper.

i.  For both pre- and post-judgment interest on any amounts awarded, pursuant to TEXAS FINANCE CODE Ch. 304; and

j.  For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint that are so triable.

Date:  February 21, 2017                                Respectfully submitted,

**HERMAN, HERMAN & KATZ, LLC**

/s/ Bruce Steckler
Bruce Steckler (Texas Bar No. 00785039)
Bruce@Stecklerlaw.com
**STECKLER GRESHAM COCHRAN PLLC**
12720 Hillcrest Road – Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
Fax: 972-387-4041

**HERMAN, HERMAN & KATZ, LLC**
Craig M. Robinson (Louisiana Bar No. 32934)
820 O'Keefe Ave.
New Orleans, LA 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
Email: crobinson@hhklawfirm.com

*Attorneys for Plaintiffs*